Case: 10-1673    Document: 26    Filed: 08/10/2010    Page: 1

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

PULTE HOMES, INC.,                    )

        )

   Plaintiff-Appellant          )

        )                    Case No. 10-1673

   vs.                                       )

        )

Laborers' International Union of North   )
America, et al,                               )

   Defendants-Appellees.        )

---

**CORRECTED OPPOSITION BRIEF OF APPELLEES LABORERS'
INTERNATIONAL UNION OF NORTH AMERICA, TERENCE
O'SULLIVAN, AND RANDY MAYHEW**

Respectfully submitted,


/s/ Terrance G. Reed
Terrance G. Reed
LANKFORD & REED, PLLC
120 N. St. Asaph Street
Alexandria, VA  22314
703-299-5000
tgreed@lrfirm.net


/s/ Christopher P. Legghio
Christopher P. Legghio
Martens, Ice, Klass, Legghio &
Israel, P.C.
305 S. Washington Ave., Ste. 600
Royal Oak, MI  48067-3837
248-398-5900


*Counsel for Defendants-Appellees*

## **TABLE OF CONTENTS**

Table of Authorities.................................................iv

Counterstatement of the Case....................................1

Standards of Review...............................................6

Summary of Argument............................................11

Argument..........................................................13

I.  The District Court Did Not Err in Concluding
    That the Amended Complaint Failed to State a
    Transmission Violation of the CFAA.................13

    A.  The District Court Did Not Require an
        Allegation of Physical Damage................18

    B.  The Amended Complaint Fails to Allege
        Computer Damage Scienter....................20

        1.  The Cook Letter Does Not Support
            Computer Damage Scienter................21

        2.  LIUNA's Alleged Knowledge of the
            Falsity of Its Unfair Labor Practice
            Claims is Insufficient to Plead
            Scienter........................................23

        3.  LIUNA's Alleged Motive to Harm Pulte
            Based Upon a Corporate Harassment
            Campaign Against Pulte is Insufficient to Plead
            Scienter........................................25

i

4.    The District Court Properly Applied
      Pleading Doctrine In Concluding that Pulte
      Failed to Plead Intent to Cause Computer
      Damage...........................................28

II.  The District Court Did Not Err in Concluding that the
     Amended Complaint Failed to State an Access
     Violation of the CFAA...................................31

III. The District Court's Plain Meaning Construction of the
     CFAA is Supported By Constitutional and Statutory
     Construction Doctrine....................................40

IV.  The District Court Did Not Abuse its Discretion by
     Not Granting Leave to Amend Sua Sponte When
     Plaintiff Never Filed a Motion for Leave to Amend...43

V.   In the Alternative, This Court Should Affirm Based
     Upon Labor Preemption...................................46

     A.   Garmon/Brown Preemption Applies................47

          1.    Garmon/Brown Preemption Applies, Making
                The Garmon Exceptions Inapposite.............47

          2.    Even if Not "Actually Protected", the Activity
                Is Arguably Protected, Triggering Garmon
                Preemption in Favor of the NLRB...............48

     B.   Machinists Preemption Applies......................51

          1.    Machinists Preemption is Not Limited to
                Collective Bargaining...........................51

          2.    Machinists Preemption is Not Limited to Laws
                of General Applicability.......................52

     C.   Garmon and Machinists Preemption Apply to the
          Sole Federal Claim...................................56

1.  <u>Machinists</u> Preemption Applies to
    Federal Claim..............................57

2.  <u>Garmon</u> Preemption Applies to the
    Federal Claim..............................59

Conclusion........................................................60

# TABLE OF AUTHORITIES

**CASES:**

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,*
    280 F.3d 619 (6th Cir. 2002).............................................11

*American Dental Association v. Cigna Corp.,*
    605 F.3d 1283 (11th Cir. 2010)........................................11,22

*AOL v. Nat'l Health Care Discount, Inc.*
    121 F. Supp. 1255 (N.D. Iowa 1990)...................................*passim*

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009)..................................................*passim*

*Atlantic Recording Corp. v. Raleigh,*
    2009 WL 1543458 (E.D. Mo. June 2, 2009).........................17

*Begala v. PNC Bank, Ohio,*
    214 F.3d 776 (6th Cir. 2000)............................................46

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007).......................................................9

*Brinkman v. Dallas County,*
    813 F.2d 744 (5th Cir. 1987)...........................................9,31

*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973)....................................................41,43

*Brown Hotel and Restaurant Employees and Bartenders, Int'l.,*
    468 U.S. 491 (1984)......................................................17

*Building and Constr. Trades Council v. Associated Builders & Contractors of Mass.,*
    507 U.S. 218 (1993)......................................................41

*Carlsbad Tech. Inc. v. HIF Bio, Inc.,*
    129 S. Ct. 1862 (2009)..................................................8,41

*Chamber of Commerce v. Brown,*
    554 U.S. 60, 128 S. Ct. 2408 (2008)................................*Passim*

*Cincinnati Ins. Co. v. Byers,*
    151 F.3d 574 (6th Cir. 1998)...........................................7

Case: 10-1673    Document: 26    Filed: 08/10/2010    Page: 5

Case: 10-1673    Document: 26    Filed: 08/10/2010    Page: 6

*City Council v. Taxpayers for Vincent*,
466 U.S. 789 (1984)………………………………………………42

*Communication Workers v. Beck*,
487 U.S. 735 (1988)…………………………………………………3

*Confederate Mem'l Ass'n v. Hines*,
995 F. 2d 295 (D.C. Cir. 1993)…………………………………46

*Cozarelli v. Inspire Pharmaceuticals, Inc.*,
549 F.3d 618 (4th Cir. 2008)……………………………………45

*Czech v. Wall Street on Demand, Inc.*,
674 F. Supp. 2d 1102 (D. Minn. 2009)…………………………*Passim*

*Doe v. Cahill*,
884 A.2d 451 (Del. 2005)………………………………………43

*DTR Industries, Inc. v. NLRB*,
39 F.3d 106 (6th Cir. 1994)(unpublished opinion)……………56

*Edward J. Bartolo Corp v. Florida Gulf Bldg. and Constr. Trades Council*,
485 U.S. 568 (1988)……………………………………………41,42

*Farmer v. United Brotherhood of Carpenters*,
430 U.S. 290 (1974)………………………………………………54

*Golden State Transit Corp. v. City of Los Angeles*,
493 U.S. 103 (1989)…………………………………………………3

*H.A. Artists & Associates, Inc. v. Actor's Equity Ass'n*,
451 U.S. 704 (1981)………………………………………………59

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*,
457 U.S. 702 (1982)………………………………………………50

*Jet One Group, Inc. v. Halcyon Jet Holdings*,
2009 WL 2524864 (E.D.N.Y. August 14, 2009)………………41

*Joffroin v. Tufaro*,
606 F.3d 235 (5th Cir. 2010)……………………………………9

*Letter Carriers v. Austin,*
    418 U.S. 264 (1974)..................................................26

*LRVCC Holdings LCC v. Brekka,*
    581 F.3d 1127 (9th Cir. 2009).......................................43

*Mobile Mechanical Contractors Ass'n v. Carlough,*
    664 F.2d 481 (5th Cir. 1981)........................................62

*Mourning v. Family Publications Service, Inc.,*
    411 U.S. 356 (1973)..................................................41

*NAACP v. Claiborne Hardware Co.,*
    458 U.S. 886 (1982)...............................................10,41

*New York Telephone Co. v. New York State Department of Labor,*
    440 U.S. 519 (1979)..................................................54

*New York Times v. Sullivan,*
    376 U.S. 254 (1964)..................................................26

*NLRB v. Consolidated Biscuit Co.,*
    301 Fed. Appx. 411 (6th Cir. 2008) (unpublished opinion)....24

*NLRB v. Gissel Packing Co.,*
    395 U.S. 575 (1969)..................................................56

*Old Dominion Branch No 496, Nat'l Letter Carriers v. Austin,*
    418 U.S. 264 (1974)..................................................26

*Pierson v. Ahern,*
    2005 WL 168 (Mich. App. July 19, 2005).....................49,51

*Posner v. Essex Ins. Co.,*
    178 F. 3d 1209 (11th Cir. 1999)....................................45

*PR Diamonds, Inc. v. Chandler,*
    364 F.3d 671 (6th Cir. 2004).....................................7,46

*Pulte Homes, Inc. v. LiUNA,*
    2009 WL 597263 (E.D. Mich. September 24, 2009).........2

*Role Models America, Inc. v. Jones,*
    305 F. Supp. 2d 564 (D. Md. 2004)............................33

*Skilling v. United States,*
        130 S. Ct. 2896 (2010)..................................................44

*Sparshott v. Feld Entertainment, Inc.,*
        311 F.3d 425 (D.C. Cit. 2002)....................................9

*Storer Communications, Inc. v. National Ass'n Broadcast Employees,*
        854 F.2d 144 (6th Cir. 1988).....................................42

*Storey v. Local 327, Int'l Broth, Teamsters,*
        759 F. 2d 517 (6th Cir. 1985)...................................60

*Tamoxifen Citrate Antitrust Litig.,*
        466 F. 3d 187 (2nd Cir. 2006)..................................45

*Thornhill v. Alabama,*
        310 U.S. 88 (1940)..............................................27,42

*Travel Agent Commission Antitrust Litig.,*
        583 F.3d 869 (6th Cir. 2009)...................................22

*Trollinger v. Tyson Foods,*
        370 F.3d 602 (6th Cir. 2004)...................................60

*Unger v. City of Mentor,*
        2010 WL 2842742 (6th Cir. July 21, 2010)
        (unpublished opinion).........................................8

*United States v. Dairy Farmers of America,*
        426 F.3d 856 (6th Cir. 2005.....................................8

*United States v. Hutcheson,*
        312 U.S. 219 (1941)...............................................50

*United States v. Johnson,*
        440 F.3d 832 (6th Cir. 2006)....................................8

*United States v. Lanier,*
        520 U.S. 259 (1997)...............................................41

*United States v. McBoyle,*
        283 U.S. 25 (1931) ...............................................41

*U.S. v. Perkins,*
        994 F.2d 1184 (6th Cir. 1993)..................................47

*United States v. Still,*
    102 F.3d 118 (5th Cir. 1996)……………………………8

*United States ex rel. Williams v. Martin-Baker Aircraft Co.,*
    389 F. 3d 1251 (D.C. Cir. 2004)……………………45

*W.F. Bolin Co. v. NLRB,*
    70 F.3d 863 (6th Cir. 1995)……………………………24

*Wilson v. Wilkinson,*
    28 Fed. Appx. 465 2002 WL 123580 (6th Cir. 2002)
    (unpublished opinion)……………………………7

**Statutes and Regulations:**

18 U.S.C. § 1030……………………………………………2

18 U.S.C. § 1030(a)(5)(A)……………………………17

18 U.S.C. §§ 1030(a)(5)(B) & (C) …………………33

28 U.S.C. § 158……………………………………27

28 U.S.C. § 1367……………………………………4,6,7

29 U.S.C. § 52………………………………………59

29 U.S.C. §101………………………………………2

29 U.S.C. §104(e) (g)…………………………42,61

29 U.S.C. § 157……………………………………48

29 U.S.C. § 158……………………………………48,61

**Other:**

Cox, <u>Labor Law Preemption Revisited,</u>
    85 Harv. L. Rev. 1337 (1972)……………………27

Pulte Building Systems, LLC, No. 28-CA-22678
    (Region 28 October 30, 2009)……………………3,24

Pulte Building Systems, LLC, No. 28-CA-22719

(Region 28 November 30, 2009).........................25

# STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Laborers' International Union of North America ("LiUNA") requests oral argument to address any questions related to the record, as well as the legal arguments made by either party, in this matter involving novel and complex legal issues.

x

## COUNTERSTATEMENT OF THE CASE

On September 15, 2009, Appellee Pulte Homes, Inc. ("Pulte") filed suit against Defendants Laborers' International Union of North America ("LIUNA"), its General President Terrence O'Sullivan, and its Director of Organizing, Randy Mayhew (hereinafter LIUNA, et al.), alleging that they had violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), and committed various state law torts, by encouraging individuals to send email or telephone messages to Pulte employees asking Pulte to rehire the employees it terminated for wearing t-shirts with LIUNA's colors and insignia.   Pulte simultaneously asked the District Court to enjoin Defendants, and their agents, from such communications, and to take down the portion of LIUNA's website that encouraged such communications.

The District Court denied Pulte's motions seeking injunctive relief against this or similar communications based upon the jurisdictional prohibition of the Norris-LaGuardia Act, 29 U.S.C. § 101, barring issuance of federal injunctions against speech publicizing a labor dispute, or against the exercise of assembly rights in a labor dispute. R. 14 (Pulte Homes, Inc. v. LIUNA, 2009 WL 597263 (E.D. Mich. September 24, 2009)), on appeal as Case No. 09-2245 (6th Cir). [1] Specifically, the District Court held that the email and telephone communications

---

[1] Citations to the record are made as R. ___ followed by the page or reference to the specific page in the docket entry.  For clarity's sake, page references to the opinion on appeal (R. 37) will be to the Westlaw pagination.

1

were part of a "labor dispute" between Pulte and LIUNA that involved a "division" of Pulte known as PBS at which Pulte employees in Tucson, Arizona were terminated allegedly for engaging in labor organizing. R. 14, at *1 (Opinion denying injunction, at *1). See also R. 21, Amended Complaint ¶ 16 (alleging that, on September 4, 2009, Pulte Building Systems ('PBS), a division of Pulte, terminated" an employee); R. 37, at *2 (Opinion under appeal) (identifying PBS as "a division of Pulte Homes, Inc.").

On September 29, 2009, Pulte appealed from this denial of its motion for a preliminary injunction. R. 15. The injunction denial appeal is docketed as Case No. 09-2245, was fully briefed as of January 2010, and has since been consolidated with this appeal.

While the injunction denial appeal was being perfected, Pulte filed an Amended Complaint on October 12, 2009. R. 21. This Amended Complaint added a new state law claim invoking a Nevada computer statute (N.R.S. § 205.473). In addition, it reiterated the state law claim that Defendants had tortiously interfered with Pulte's business relationships by engaging in conduct that was improper because it allegedly violated various state or federal statutes. R. 21.

Thereafter, Defendants moved to dismiss the Amended Complaint on various grounds, including: (i) its failure to state a claim under the CFAA, the only

Case: 10-1673    Document: 26    Filed: 08/10/2010    Page: 15

federal claim; (ii) the reasons not to exercise supplemental jurisdiction under 28

U.S.C. § 1367 over the state law claims; (iii), its failure to allege state law claims;

and (iv) labor law preemption of its federal and state law claims.

On November 11, 2009, Pulte filed an oversized thirty-page Opposition

Brief, R. 31.   In its Opposition Brief, Pulte contended that the Amended

Complaint properly alleged claims under the CFAA and that the cited state tort and

statutory law were not preempted by federal labor law.  The only response offered

by Pulte on the propriety of exercising supplemental jurisdiction was a footnote

contention that, even if the CFAA claim was dismissed, exercise of supplemental

jurisdiction was warranted because of the "national scope of this matter."  R. 31, at

28 n.15.

In addition, on the last page of its Opposition Brief, Pulte placed a final

footnote, stating:

> If the Court determines that Pulte has failed sufficiently to plead one or more
> elements of any of its claims, Pulte requests the opportunity to amend its
> Complaint.  Allowing an amendment, instead of simply ordering dismissal,
> would help to conserve judicial resources given the familiarity this Court has
> with the allegations.

R. 31, at 30 n.17.

On November 30, 2009, Pulte filed its Opening Brief in the related, and now

consolidated, injunction denial appeal.   In that brief, Pulte contended that the

District Court erred in denying a preliminary injunction, and argued that injunctive relief was justified by Pulte's substantial likelihood of success on both its CFAA claim and its claims under state law.

On May 12, 2010, the District Court granted Defendants' motion to dismiss, ruling that the Amended Complaint failed to state a claim under the CFAA, and declining to exercise supplemental jurisdiction over the state law claims. Specifically, the District Court ruled that the Amended Complaint failed to state a claim that Defendants violated either the transmission or the access prongs of the CFAA.  R. 37, at **2-4.

In the six month period from the filing of its Opposition Brief on November 11, 2009, to the Motion to Dismiss and the Court's issuance of its final judgment on May 12, 2010, Pulte did not file a motion for leave to amend the Amended Complaint.  Similarly, Pulte did not file any post-judgment motion for leave to amend the Amended Complaint Instead, on May 18, 2010,  Pulte filed its notice of appeal in the instant appeal.  The sum total of Pulte's effort to seek leave to amend before the District Court is contained in footnote 17 of its Opposition to the Motion to Dismiss.

On June 28, 2010, Pulte filed its Opening Brief (OB) in this appeal.   In its Opening Brief, Pulte does not challenge, or claim error in, the District Court's

4

ruling declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

Accordingly, the state law claims in the Amended Complaint are not before this

Court.[2]    Furthermore, because Pulte has not invoked appellate review of the

dismissal of its state law claims, Pulte has no likelihood of success on its state law

claims for purposes of the consolidated appeals, including the injunction denial

appeal.

On appeal, Pulte claims two errors.  First, that the District Court erred in

ruling that the Amended Complaint failed to allege a CFAA violation under its

transmission prohibitions (OB, at 25-46) and its access prohibitions.  OB, at 46-53.

Second, Pulte claims error in the District Court's failure to grant it leave to amend

the Amended Complaint based upon a footnote request in its Opposition Brief to

the motion to dismiss in the District Court.  OB, at 53-55.

---

[2] "'[A]n appellant abandons all issues not raised and argued in its initial brief of appeal.'" United States v. Johnson, 440 F.3d 832, 845-46 (6th Cir. 2006) (quoting United States v. Still, 102 F.3d 118, 122 n.7 (5th Cir. 1996).
    Moreover, while Pulte has failed to raise the propriety of the District Court's denial of supplemental jurisdiction as an issue on appeal, the record it created below would be insufficient to sustain any such appeal.  In the District Court, Pulte justified the exercise of supplemental jurisdiction on the ground advanced in a footnote that the "national scope of this matter" justified the exercise of supplemental jurisdiction.  R. 31, at 28 n.15.  That is not one of the specific grounds for the exercise of supplemental jurisdiction as authorized in 28 U.S.C. § 1367(c).  Courts have declined to exercise supplemental jurisdiction when federal jurisdiction is predicated upon a CFAA claim that is subject to dismissal.  See,e.g., American Family Mutual Insurance Co. v. Rickman, 554 F. Supp.2d 766, 772 (N.D. Ohio 2008); Garelli Wong & Associates v. Nichols, 551 F. Supp.2d 704, 711 (N.D. Ill. 2008).

## STANDARDS OF REVIEW

Appellees agree with Appellant that the standard of review of a Rule 12 dismissal is <u>de novo</u>, but disagree that this standard also applies to a dismissal without leave to amend. Where, as here, a plaintiff does not file a motion for leave to amend, a district court's decision to dismiss a complaint without leave to amend is reviewed only for an abuse of discretion. <u>PR Diamonds, Inc. v. Chandler</u>, 364 F.3d 671, 698 (6th Cir. 2004). ("An abuse of discretion has been defined by this court as a definite and firm conviction that the trial court committed a clear error of judgment."); <u>Wilson v. Wilkinson</u>, 28 Fed. Appx. 465, 466, 2002 WL 123580, *1 (6th Cir. 2002) (unpublished opinion) (citing <u>Cincinnati Ins. Co. v. Byers</u>, 151 F.3d 574, 578 (6th Cir. 1998)).

Pulte has not challenged on appeal the District Court's decision to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367. <u>See</u>, <u>e.g.</u>, OB, at 3-4 (list of issues presented does not include claim of error in denial of supplemental jurisdiction). An issue which is not included in an Opening Brief's statement of issues along with an accompanying argument is not preserved for appeal. <u>United States v. Dairy Farmers of America</u>, 426 F.3d 850, 856 (6th Cir. 2005) ("an appellant's brief must include a statement of issues for our review, and an

6

argument with respect to each issue;" the "government's attempt to save the issue by inclusion in its reply brief is unavailing").[3]

Ordinarily, a district court's decision to decline supplemental jurisdiction over state law claims is reviewed for abuse of discretion, Carlsbad Tech. Inc. v. HIF Bio Inc., 129 S. Ct. 1862, 1867 (2009), but where, as here, it is not challenged on appeal, the issue is not subject to appellate review. "'[A]n appellant abandons all issues not raised and argued in its initial brief of appeal.'" United States v. Johnson, 440 F.3d 832, 845-46 (6th Cir. 2006) (quoting United States v. Still, 102 F.3d 118, 122 n.7 (5th Cir. 1996). Where, as here, an Appellant does not challenge the correctness of a District Court's ruling, this Court "treat[s] the issue as abandoned." McGraw v. United Ass'n of Journeymen and Apprentices of Plumbing and Pipe Fitting Indus. of United States and Canada, 341 F.2d 705, 710 (6th Cir. 1965).

The procedural default rules apply to failures to challenge a trial court's refusal to exercise supplemental jurisdiction over state claims. Unger v. City of Mentor, 2010 WL 2842742, *5 (6th Cir. July 21, 2010) (unpublished opinion) (citing Johnson, failure to raise and develop supplemental jurisdiction argument in opening or reply brief constitutes forfeiture of claim); Joffroin v. Tufaro, 606 F.3d

---

[3]  See also Aetna Cas. & Surety Co. v. Heahey Constr. Co., 219 F.3d 519, 545 (2000) (issues not raised in initial brief cannot be raised in reply brief).

235, 238 n.2 (5th Cir. 2010). See also McGraw, 341 F.2d at 710 (failure to challenge district court ruling on appeal renders it unreviewable on appeal). Accord, Sparshott v. Feld Entertainment, Inc., 311 F.3d 425, 431 (D.C. Cir. 2002) (same); Brinkman v. Dallas County, 813 F.2d 744, 748 (5th Cir. 1987) (same).

This Court reviews a Rule 12(b)(6) dismissal de novo, and applies the same standard that guided the District Court. R. 37, at *2 (citing Bell Atlantic v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In that regard, the District Court noted below that it was limited to the pleadings, incorporated documents, and matters as to which it could take judicial notice. R. 37, at *2.

In evaluating the sufficiency of pleadings, the Supreme Court has instructed that mere "legal conclusions" are not entitled to the assumption of truth, and that a claim must be plausible to survive a motion to dismiss. Iqbal, 129 S. Ct. a 1950 (2009) (citing Twombly, 550 U.S. at 555). An important policy reason for this pleading standard is the protection of litigants, and courts, from protracted litigation and excessive discovery costs. Twombly, 550 U.S. at 558-59. This policy justification is especially applicable to labor disputes, as to which Congress has created a separate expert administrative body (the National Labor Relations Board), that has its own hearing and discovery processes geared toward

Case: 10-1673    Document: 26    Filed: 08/10/2010    Page: 21

the resolution of disputes in the often-charged atmosphere associated with labor controversies.[4]

In addition, the Supreme Court has instructed that "determining whether a complaint states a plausible claim will . . . be a context-specific task that requires a court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. Here, the specific context of this case is a labor dispute involving the associational and speech rights of workers that are protected by federal labor law and the Constitution.[5] Moreover, courts "may infer from the factual allegations

---

[4] The prospect that one party to a labor dispute would have civil discovery rights over his adversary's protected labor speech and concerted activity during an organizing campaign raises its own set of constitutional and statutory dilemmas for courts. See, e.g. NAACP v. Button, 371 U.S. 415, 430 (1963)("effort of a union official to organize workers" may be privileged) (citing Thomas v. Collins, 323 U.S. 511 (1945)); Mallick v. Int'l Brotherhood of Elec. Workers, 749 F.2d 771, 785 D.C. Cir. 1984) (in suit for disclosure of union financial information, disclosure should be denied if "of union's organizing strategy, negotiating plans, or other secrets"); Int'l Union v. Garner, 102 F.R.D. 108 (M.D. Tenn. 1984) (suspending discovery because it appeared primarily to be focused on developing evidence for pending NLRB unfair labor practice proceedings). See also LIUNA Opposition Brief in Pulte v. LIUNA, Case No. 09-2245(6th Cir.) (describing statutory and constitutional protections at issue).

[5] See, e.g. Chamber of Commerce v. Brown, 554 U.S. 60, 128 S. Ct. 2408, 2413 (2008) (section 8(c) of NLRA implements First Amendment); Letter Carriers v. Austin, 418 U.S. 264, 277 (1974) (the "primary source of protection for union freedom of speech under the NLRA, however, particularly in the organizational context, is the guarantee in § 7 of the Act of the employee's rights 'to form, join, or assist labor organizations"); Thornhill v. Alabama, 310 U.S. 88, 102-03 (1940) ("the dissemination of information concerning the facts of a labor dispute must be

in the complaint 'obvious alternative explanation[s] which suggest lawful

conduct rather than the unlawful conduct the plaintiff would ask the court to

infer.'" American Dental Association v. Cigna Corp., 605 F.3d 1283, 1290 (11[th]

Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1951-52 (quoting Twombly, 550 U.S. at

567)).   Here, the fact that communications at issue arise in the context of a labor

dispute--a matter which is subject to constitutional and statutory protections in

order to promote more, not less, such speech--provides an important alternative

explanation for the communications at issue.

Furthermore, this Court can affirm the judgment on any ground supported by

the record, even if different from the grounds given by the District Court.

Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc., 280 F.3d 619,

629 (6th Cir. 2002).

---

regarded as within that area of free discussion that is guaranteed by the
Constitution").

## SUMMARY OF ARGUMENT

The primary issue before this Court is Appellant Pulte's contention that sending, or facilitating the sending, of emails and phone messages from individuals protesting an alleged unfair labor practice constitutes a federal crime under the CFAA's transmission and access provisions. Specifically, Pulte challenges the District Court's ruling that Pulte's Amended Complaint fails to state a transmission or an access claim under the CFAA, and also the District Court's failure, <u>sua sponte</u>, to give Pulte leave to file a Second Amended Complaint curing any legal defects of the Amended Complaint's CFAA allegations.

As to the CFAA transmission cause of action set forth in 18 U.S.C. § 1030(a)(5)(A), Pulte accepts the District Court's statutory construction that this requires the pleading of Defendant's intent to cause computer damage. Opening Brief, at 33 ("the CFAA requires, among other elements, that Pulte establish that Defendants intentionally caused damage to Pulte's computer systems"). Similarly, as to the access cause of action set forth in 18 U.S.C. §§ 1030(a)(5)(B) & (C), Pulte accepts the District Court's statutory construction that this requires Pulte to plead that Defendants gained the freedom and ability to make use of Pulte's computer. Opening Brief, at 48-49. Pulte does challenge, however, the District

Court's conclusion that the Amended Complaint fails to plead either (i) defendants' intention to cause damage to Pulte's computers or (ii) defendants' obtaining access to Pulte's computers, by means of transmitting emails or voicemails.

Pulte claims that it sufficiently pled Defendants' intent to cause computer damage by pleading that: (a) Pulte's General Counsel sent a letter to Defendants on September 13, 2009 threatening suit if the "improper activities did not stop" (AC, ¶ 41); (b) Defendants had previously made, and thereafter encouraged the dissemination of, an allegedly false unfair labor practice charge against Pulte that it terminated its employees for engaging in organizing activity (AC, ¶¶ 17, 19, 21, 24, 26); and (c) the emails and telephones calls were part of a larger labor organizing "corporate campaign" aimed at Pulte. AC, ¶38.  OB, at 33-42.

As for the access claim, Pulte distorts the holding of a different District Court opinion (an opinion which the District Court cited and accurately construed below) to make the unprecedented, and implausible legal claim, that merely sending an email constitutes obtaining access to every computer through which the email travels. Opening Brief, at 49-50.  Under the Twombly and Iqbal opinions, the District Court did not err in concluding that the Amended Complaint fails to allege either a transmission or an access claim under the CFAA.

12

Pulte's additional request on appeal for leave to amend the Amended

Complaints' CFAA allegations so as to state a valid claim is procedurally defaulted

because not made below by motion, but in any event fails because, under this

Circuit's precedent, a District Court does not abuse its discretion in failing to grant

leave to amend in the absence of a motion for leave.

# ARGUMENT

## I. The District Court Did Not Err in Concluding that the Amended Complaint Failed to State a Transmission Violation of the CFAA

Quoting the plain language of 18 U.S.C. § 1030(a)(5)(A), the District

Court accurately described the elements of a violation of this statutory provision, --

labeled by Pulte in this case as the "transmission prong" of the CFAA.  R. 37, at

*2-4.  Specifically, the District Court held that the "plain language" of the

transmission prong statute requires that a Defendant "'intentionally cause[]

damage, without authorization, to a protected computer.'"  R.37, at *3 (quoting 18

U.S.C. § 1030(a)(5)(A)).  The District Court found no such allegation of intention

to cause computer damage (computer damage scienter) in the Amended Complaint.

Id.  Instead, it noted that "Plaintiff alleges that Defendants encouraged the sending

of telephone calls and e-mails for the purse of intimidating and harassing

Plaintiff's employees, as well as preventing Plaintiff from conducting its normal

business operations."  Id.

Case: 10-1673   Document: 26   Filed: 08/10/2010   Page: 26

Upon review of the Amended Complaint's allegations, the Court concluded that "Plaintiff did not inform Defendants that their conduct was harmful to any of Pulte's computer systems." R. 38, at *3. Furthermore, the District Court considered, and rejected, the contention-- renewed by Pulte on appeal— that "Defendants intentionally caused damage to Plaintiff's computers by continuing to send e-mails and telephone calls after Plaintiff asked Defendants to stop." Id. To the contrary, according to the District Court: "Plaintiff's letter to Defendants [the letter from Mr. Cook] only complained about false allegations relating to the termination of Plaintiff's employees, Defendants encouraging LIUNA members to further disseminate such allegations, and that the e-mails and voice messages were filling mailboxes and distracting Plaintiff's employees from their work." Id.

On appeal, Pulte does not dispute the District Court's plain language construction of § 1030(a)(5)(A) as requiring a plausible allegation that Defendants intended to cause computer damage. See, e.g. OB at 33 ("the CFAA requires, among other elements, that Pulte establish that Defendants intentionally caused damage to Pulte's computer systems"). Instead, Pulte attempts to overcome the District Court's ruling by: (1) mischaracterizing the ruling as requiring an allegation of physical damage (OB at 27-32); and (2) arguing that it sufficiently pled Defendants' intent to cause computer damage based upon: (a) a letter by Pulte's General Counsel Mr. Cook; (b) LIUNA's alleged knowledge about the

14

falsity of its unfair labor practice claims; and (c) LIUNA's alleged "motive" to harm Pulte's business based upon its "larger corporate harassment campaign against Pulte." OB, at 33-42.   None of these contentions have merit.

Although the District Court's plain language interpretation of § 1030(a)(5)(A) is unchallenged by Pulte on appeal, it is also undoubtedly correct. The statutory requirement that a complaint plausibly allege that a defendant intentionally caused damage (computer damages scienter), was examined in Czech v. Wall Street on Demand, Inc., 674 F. Supp.2d 1102 (D. Minn. 2009) (dismissing a CFAA claim for failure to plead that a defendant intentionally caused damages).

In the Czech case, plaintiff, on behalf of a proposed class, alleged that she was the recipient of unwanted text messages from the defendant investment advisor company, and claimed damages under the CFAA for the alleged depletion of available cell phone memory and interference with other calls or messages. 674 F.Supp.2d at 1115.   The Amended Complaint in the Czech case did—unlike the Amended Complaint here--specifically allege that the unwanted text messages "'impaired the integrity and availability or data, program(s), system(s), or information found in or on Plaintiff's cellular telephone.'"   Id. (quoting amended complaint).   Nonetheless, the Czech Court held that even these allegations of computer damage were too conclusory to state a claim. Id. at 1119.

15

The CFAA defines damages as any "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). But the Amended Complaint does not allege any impairment to the availability of data, a program, a system, or information. It only offers a conclusory allegation of "damages." R. 21, Amend. Compl., ¶ 66. On appeal, Pulte attempts to bolster its conclusory allegation of damages by reference to the statutory definition of damage. OB, at 28. But Twombly and Iqbal compel the opposite conclusion— one cannot plead the  factual preconditions of a necessary statutory element (impairment) by merely pleading the ultimate legal conclusion (damages). Twombly has been construed as requiring the dismissal of CFAA damage claims when a complaint merely parrots the statutory definition of impairment because such allegations "contain nothing more than 'a formulaic recitation of the elements of a claim' under" the CFAA. Atlantic Recording Corp. v. Raleigh, 2009 WL 1543458 (E.D. Mo. June 2, 2009) (quoting Twombly, 127 S. Ct. at 1965).

More to point here, the Czech opinion held that a transmission claim under the CFAA could not be based upon the receipt of unwanted text messages, but rather must plausibly allege that defendant intended to cause computer damage. 674 F. Supp.2d at 1119 (complaint must "allege facts plausibly supporting a theory that by sending unwanted text messages, [Defendant] *intended* to cause damage to Czech's cell phone, and such a theory of liability must subject those who send

16

unwanted messages—but not those who send wanted messages—to a civil action")
(emphasis in the original).

Initially, the <u>Czech</u> opinion noted that, to the extent the plaintiff's
"impairment" contention was dependent upon her cell phone's limited message
capacity, this capacity could also be exceed by wanted messages. 674 F.Supp.2d at
1118.  In order to insure that "the culpable conduct was intended to cause the
prohibited outcome," a plausible transmission claim must allege that the sender
"knew [the service] would be pushed past their operational limits by [defendant's]
unwanted message—that the sender knew the circumstances of the recipient's
device when such messages would be received." <u>Id</u>.

Here, as in the <u>Czech</u> case, the Amended Complaint fails to allege that
Defendants "knew the circumstances of [Pulte's computer] usage such that
[Defendants] could, at any given time, intend to disrupt her service by sending
unwanted text messages that would exhaust the [computer's] limited resources."
674 F.Supp.2d at 1119. <u>Compare</u> R. 37, at *3 ("Plaintiff did not inform Defendants
that their conduct was harmful to any of Plaintiff's computer systems.").  As the
<u>Czech</u> opinion noted; "Indeed, it is far from clear that a sender could know such
information." <u>Id</u>.

17

Similarly here, there is no allegation in the Amended Complaint that Defendants knew of the usage, capacities, or limitations of Pulte's computers. Nor does the Amended Complaint explain how Defendants did, or could know such information. <u>Czech</u>, 674 F. Supp.2d at 1119.

## A. The District Court Did Not Require an Allegation of Physical Damage

In a footnote, Pulte acknowledges that the "District Court did not explicitly state that physical damage was required," to state a transmission violation of the CFAA. OB at 27 n.4. Nonetheless, Pulte claims that the District Court must have implicitly imposed a physical damage requirement because it held that Pulte must prove "damage to Pulte's computers." <u>Id</u>., quoting slip. op. at *3. But the District Court did nothing more than quote the applicable statutory language, which requires plaintiff to prove that a defendant "intentionally cause damage without authorization, to a protected computer." It was Pulte's burden, and not that of the District Court, to allege facts explaining how Defendants "intentionally caused" damage to plaintiff's computer. Plaintiff failed to do so.

The closest allegation in the Amended Complaint is that the voluminous emails "overloaded recipient's e-mail accounts, causing interference with recipients' use of their e-mail accounts, computers, and Pulte's computer systems." R. 21, Amend. Compl., ¶ 56. But even this allegation fails to allege that the

18

availability of any data, program, system, or information was intentionally "impaired." Czech, 674 F. Supp.2d at 1119.

Indeed, the District Court's precise holding is that the Amended Complaint failed to allege that Defendant's "intentionally cause[d]" damage to Pulte's computers. R, 34 at *3. Thus, the District Court's holding focused upon the lack of any allegation that Defendants intended to cause damage to Pulte's computers, rather than upon the nature of any resulting damage (although the Amended Complaint is deficient as to this as well). For example, there is no allegation that Defendants had any awareness of the robustness of Pulte's computer system, including the email or computer capacity of the self-identified "largest new home builder in the United States." OB, at 9.

Indeed, while the Amended Complaint repeatedly alleges that the content of the emails involved false allegations about Pulte's labor practices in terminating twelve of its employees (seven in Tuscon, Arizona, and four in Mesquite, Nevada),[6] the Amended Complaint does not allege any specific impairment to

_____

[6] R. 21, Amended Complaint, ¶¶ 21 (LIUNA website contains false allegations about terminations); 24 (Pulte receives emails containing "false allegations about the termination of the crew lead and the alleged termination of the other crew members"); 26 (the "emails contained false information"); 51 (LIUNA website "falsely accuses Pulte of terminating the Mesquite employees for union activity"); 54 ("e-mails contained false information, repeating the erroneous conclusion that four members of the eliminated work crew were terminated for supporting LIUNA").

19

Pulte's computer systems.[7]  Thus, while it may be fair to infer that Defendants

appreciated that LIUNA and Pulte were embroiled in a labor dispute, there is no

allegation from which to infer any awareness of Defendants about the internal

capabilities of Pulte's computer systems.

### B. The Amended Complaint Fails to Allege Computer Damage Scienter

Lacking any direct complaint allegation that Defendants had

knowledge of the capabilities of Pulte's computers, Pulte offers three grounds for

inferring computer damage scienter by Defendants: (i) the Cook letter; (ii)

LIUNA's alleged knowledge of the falsity of its unfair labor practice claims; and

(iii) LIUNA's motive to harm Pulte based upon LIUNA's alleged corporate

harassment campaign against Pulte.  All three of these allegations, however, are

fully consistent with an ongoing, lawful, organizing campaign, and are more

reflective of Pulte's sensitivity to the criticism engendered by its actions in this

labor dispute, than they are to any issue associated with computers.  Again, this

Court "may infer from the factual allegations in the complaint 'obvious alternative

---

[7]  Pulte miscites AOL v. National Healthcare Discount Inc., 121 F. Supp.2d 125
(N.D. Iowa) for the proposition that impairment is established when a large volume
of email diminishes "the capacity of [a company] to service its customers."  OB at
31 (brackets supplied by Pulte).  The AOL case, as is further discussed infra,
involved certain AOL members sending hundreds of millions of unauthorized
spam messages over the AOL network to develop marketing leads, in direct
violation of their contractual agreements with AOL .  The AOL opinion concluded
that this misuse of AOL's computers—not the email recipient's computer—could
constitute impairment of AOL's computers.

20

explanation[s] which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.'"[8]  Thus, the fact that the communications at issue address an ongoing labor dispute (communications which the Constitution and federal labor law protects and therefore promotes) suggests that they are lawful commentary upon Pulte's alleged unfair labor practices, rather than intended at undermining the unknown capabilities of Pulte's computers. See In re Travel Agent Commission Antitrust Litig., 583 F.3d 869, 909 (6th Cir. 2009) (citing Iqbal, antitrust complaint not plausible when conduct compatible with, and more likely explained by, lawful conduct).

### 1. The Cook Letter Does Not Support Computer Damage Scienter

The Amended Complaint alleges that Pulte's General Counsel (Mr. Cook) contacted defendant Randy Mayhew on September 7, 2009 and denied that Pulte had fired the seven Tuscon workers because of union activity.  R.21, ¶ 18. According to Pulte, LIUNA nonetheless persisted in its allegedly false contention that the workers were terminated in retaliation for wearing LIUNA t-shirts, including encouraging LIUNA members to send email and telephone messages to Pulte seeking the reinstatement of these workers.  Id. ¶¶ 19-26.

---

[8] American Dental Association v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1951-52 (quoting Twombly, 550 U.S. at 567)).

According to the Amended Complaint, on Sunday, September 13, 2009, the General Counsel and Secretary of Pulte Homes, Inc., Mr. Steven Cook, sent a letter to LIUNA's General President, Terence O'Sullivan, complaining about LIUNA's alleged "improper activities," and the "effect those activities had on Pulte's business, and demanding that they stop." R.21, Amend. Compl., ¶ 41.   The Amended Complaint does not, however, allege that Mr. Cook's letter contained any allegation of computer damage. Id.

Accordingly, the only pled allegation about the Cook letter is that Mr. Cook demanded that Defendants' "improper activities" cease.   The term "improper activities" is both conclusory and vague, and it certainly provides no information about any harm to Pulte's computers.

The same conclusion is evident upon the face of the Cook letter, assuming that it was incorporated by reference into the Amended Complaint.  R. 2, Exhibit 1A.  The District Court accurately characterized the Cook letter as follows: it "only complained about false allegations related to the termination of Plaintiff's employees, Defendants encouraging LIUNA members to further disseminate such allegations, and that the e-mails and voice messages were filling mailboxes and distracting Plaintiff's employees from their work." R.37, at *3. Noticeably absent from the Cook Letter, or from the Amended Complaint, is any allegation of intentional harm to Pulte's computers.  Nor, for that matter, does the Amended

22

Complaint or the Cook Letter indicate that the capacities of Pulte's computers were

depleted, exhausted, or impaired.  Further, there is certainly no pled

communication of specifics by Mr. Cook, or by anyone else at Pulte, about any

technical limitations on the functioning of Pulte's computer systems.[9]

### 2. LIUNA's Alleged Knowledge of the Falsity of Its Unfair Labor Practice Claims is Insufficient to Plead Scienter

Throughout the Amended Complaint, Pulte alleges that LIUNA's claim that

Pulte terminated its employees in retaliation for their labor organizing activity is

false, and that the emails and phone messages urging their re-hiring are equally

false.[10]   But LIUNA filed unfair labor practice charges with the NLRB over these

terminations shortly before Pulte filed this lawsuit in September, 2009 based upon

these same contentions, and the Board's General Counsel subsequently filed unfair

labor practice complaints based upon its own investigation of these same charges.

Pulte Building Systems LLC, No. 28-CA-22678 (Region 28 October 30, 2009);

---

[9]   The Amended Complaint also makes vague allegations "on information and belief" that "LIUNA and its members" have been engaged in  "spoofing," which is described as causing inaccurate caller ID displays for telephone calls. R. 21, Amend. Comp. ¶ 34.  The only factual basis offered for this "belief" is that one individual called Pulte and demanded that Pulte stop leaving messages on his cell phone. Id. ¶ 35.  Given the nationwide housing crisis that engulfed the nation and the industry over the last three years, the fact that one individual would demand that Pulte stop leaving him phone messages is hardly a plausible basis for making any accusation, much less one of "spoofing."

[10]   Termination of an employee for engaging in union organizing activity constitutes an unfair labor practice under the NLRA.  See, e.g., NLRB v. Consolidated Biscuit Co., 301 Fed. Appx. 411, *4 (6th Cir. 2008) (citing W.F. Bolin Co. v. NLRB, 70 F.3d 863, 870 (6th Cir. 1995)).

23

Case: 10-1673    Document: 26    Filed: 08/10/2010    Page: 36

<u>Pulte Building Systems LLC</u>, No. 28-CA-22719 (Region 28 November 30, 2009).[11]   Just because Pulte disagrees with these charges does not make LIUNA's advocacy of them false.

More to the point, the alleged falsity of LIUNA's unfair labor practice allegations has nothing to do with Pulte's computer systems.  Instead, the factual dispute between LIUNA and Pulte (and between Pulte and the General Counsel of the NLRB) is essentially a labor dispute over Pulte's alleged retaliation against its own employees for union organizing.   The truth or falsity of the charges and Pulte's defenses are questions of labor law.  Pulte either did, or did not, commit unfair labor practice violations, and that is a matter committed to the administrative adjudication system created by Congress—the NLRB.

While LIUNA respectfully disagrees with Pulte's characterization of LIUNA's allegations about the termination of Pulte employees as false, it is well established that, in organizing campaigns, labor speech enjoys broad constitutional and statutory protections.  Indeed, even false defamatory statements made in a

_____

[11]   The NLRB Complaints were attached as Exhibits 1 and 2 to Defendant's motion to dismiss. R.34, Exs. 1 & 2.  This Court may take judicial notice of charges filed before the NLRB. <u>Kavowras v. New York Times</u>, 328 F.3d 50, 57 (2d Cir. 2003). <u>See also</u> <u>Marcheck v. Eichenlaub</u>, 266 Fed. Appx. 392 (6th Cir. 2008)(unpublished opinion)(taking judicial notice of information on government website during appeal).

labor dispute are constitutionally protected absent an allegation and proof of sufficient malice to satisfy the constitutionally required showing to bring a defamation claim against public figures. Old Dominion Branch No. 496, Nat'l Letter Carriers v. Austin, 418 U.S. 264, 275 (1974) (citing New York Times v. Sullivan). No such allegation of malice or defamation is made in Pulte's Amended Complaint.

The imputed "falsity" is LIUNA's characterization of its own filed unfair labor practice charge before the NLRB. It is implausible that such an allegation by a union engaged in an organizing campaign—even if false—is beyond the constitutional and statutory protections applicable to labor speech. Hence, the alleged "falsity" of LIUNA's unfair labor practice charges against Pulte, which were then pursued by Board Counsel for the NLRB,[12]does not make plausible Pulte's conclusory assertion that Defendants intended to cause damage to Pulte's computers. R. 21, Amend. Comp. ¶ 66.

### 3. LIUNA's Alleged Motive to Harm Pulte Based Upon a Corporate Harassment Campaign Against Pulte is Insufficient to Plead Scienter

Pulte alleges that LIUNA's advocacy of sending email and telephone messages asking Pulte to re-hire its wrongfully terminated employees is "actually

---

[12] See, e.g. R. 34, Exs. 1 & 2 (attached Board Complaints of October 30, 2009 and November 30, 2009).

25

only a piece of a larger national corporate campaign aimed against Pulte." R. 21.

Amend. Compl. ¶ 38.    On appeal, Pulte cites the Amended Complaint's vague

allegation of LIUNA's nationwide "corporate campaign" against Pulte as giving

LIUNA a "motive" intentionally to inflict computer damage upon Pulte's

computers. OB at 35.    But the more plausible inference from LIUNA's advocacy

is that it is attempting to organize Pulte employees, including publicizing its labor

dispute with Pulte.   See, e.g., R.14 (Order denying injunction, and holding that

Pulte Homes and LIUNA engaged in a labor dispute within the meaning of the

Norris-LaGuardia Act, 29 U.S.C. § 102(e), and emails and telephone messages at

issue are efforts to publicize dispute), on appeal as Case No. 09-2245 (6th Cir)).

Such labor speech is expressly protected under the federal labor laws and the First

Amendment.   29 U.S.C. § 157 (right to organize)[13]; 28 U.S.C. § 158(c) (free

speech);[14]    Thornhill v. Alabama, 310 U.S. 88, 102 (1940) (The "dissemination

---

[13] Letter Carriers, 418 U.S. at 277 (the "primary source of protection for union freedom of speech under the NLRA, however, particularly in the organizational context, is the guarantee in § 7 of the Act of the employee's rights 'to form, join, or assist labor organizations'").

[14] 29 U.S.C. § 158(c) ("The expressing of views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any provisions of this subchapter, if such expression contains no threat or reprisal or force or promise of benefit."). See Brown v. Chamber of Commerce, 128 S. Ct. at 2413-14 (section 8(c) implements the First Amendment, and bars federal regulation of noncoercive unionization speech) (citing and quoting NLRB v. Gissell Packing, 395 U.S. 575,

26

Case: 10-1673    Document: 26    Filed: 08/10/2010    Page: 39

of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution.").

On appeal, Pulte embellishes its terse pleading below of a "corporate campaign" against Pulte by now characterizing this campaign as a "corporate harassment campaign." Compare OB at 35 with R. 21, Amended Complaint at ¶ 38. In its pleading, however, the only allegation about harassment involved the communications at issue, and the only allegation offered about the "corporate campaign" is that it involved "the improper use of communication media and activities." R. 21, Amended Complaint at ¶¶ 38-39. Without any further explication of what "communication media and activities" are the subject of "improper use," it is hard to place any significance upon LIUNA's alleged corporate campaign.

More to the point, a contention by one party to a labor dispute that its adversary is engaged in the "improper use of communication media and activities" would encompass most labor disputes. Just as parallel conduct is insufficient to plausibly plead an antitrust conspiracy (Twombly), the alleged improper use of

---

618 (1969)). As the Supreme Court held in the Chamber of Commerce case, "the addition of § 8(c) [to the NLRA in 1947] expressly precludes *regulation of speech about unionization*." Id. at 2414. (emphasis added).

27

communication media in a labor dispute does not plausibly plead an intent to cause computer damage under the CFAA.

### 4. The District Court Properly Applied Pleading Doctrine in Concluding that Pulte Failed to Plead Intent to Cause Computer Damage

Pulte criticizes the District Court's application of pleading doctrine, arguing that the Court failed to accept its general allegations of Defendants' intent, that the Court improperly imposed a pleading requirement that Pulte had to notify Defendants of harm to its computers, and that Pulte provided notice of computer damage by means outside of the Amended Complaint (i.e., through argument or declaration at the preliminary injunction hearing). The District Court properly applied pleading doctrine to hold Pulte to its pleading burden of plausibly alleging intent to cause computer damage.

Pulte argues that intent can be pled generally, and it claims that because "few post-Twombly courts have addressed the issue of what must be pled with respect to intent," this Court should instead look to summary judgment precedent regarding intent. Opening Brief, at 38-40. But the Supreme Court's Iqbal opinion in 2009 is just such a post-Twombly opinion addressing the pleading standard for intent, and it rejects this very argument that intent can be pled in a conclusory manner. 129 S. Ct. at 1954. The Iqbal opinion acknowledged that intent can be

pled generally, but held that it cannot be pled in a conclusory manner because: "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context". Id.   Here, the only allegation of Defendants' intent is the conclusory allegation of paragraph 66 which merely provides what the Iqbal and Twombly opinions have held is insufficient for pleading purposes.  That is, it offers "'a formulaic recitation of the elements'" which is "'conclusory and not entitled to be presumed true.'" Iqbal, 129 S. Ct. at 1951 (quoting Twombly, 550 U.S. at 554-55).

Pulte also claims that the District Court erred in ruling that "because Pulte had not specifically informed Defendants that its computer systems were damaged, it therefore had no plausible claim of intentional damage." OB at 42-43.  Pulte contends that it had no obligation to give Defendants notice of any computer damage, and that in any event it gave Defendants adequate notice through the Cook letter, followed by the original complaint, and through the arguments of counsel at the preliminary injunction hearing of September 22, 2009. Id. at 44-45. These are not answers to the District Court's Rule 12 ruling that the Amended Complaint filed on  October 12, 2009 fails to allege computer damage scienter.

Initially, the operative notice issue is not what Pulte's attorneys orally represented, but rather what the Amended Complaint pleads.   Indeed, the District

Court properly held—and Pulte has not challenged this ruling on appeal[15]—that its review was restricted to the plausible allegations in the Amended Complaint. R. 38, at *2 ("this Court may only consider 'the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice.'") (quoting 2 Moore Moore's Federal Practice ¶ 12.34[2] (3d ed. 2000)).  Thus, Pulte's wholesale reliance upon declarations it offered at the preliminary injunction hearing (OB, at 13-16), and upon arguments of Pulte counsel in their preliminary injunction briefs or at the hearing (OB, at 21, 45), are simply misplaced.  On the question of notice, the burden of pleading falls squarely upon plaintiff, and that burden must be satisfied in its pleading, not by argument of counsel.

The grounds offered by Pulte as satisfying its pleading burden were correctly found wanting by the District Court. The District Court addressed, and rejected the adequacy of the Cook letter as a sufficient pleading of computer damage scienter. The paragraphs of the original complaint cited by Pulte's Opening Brief (at 45) are also pled verbatim in the Amended Complaint, and hence they do no more than make the general allegations accurately described in the District Court's opinion as insufficient to  plead computer damage scienter.

---

[15]  See McGraw, 341 F.2d at 710 (failure to challenge lower court ruling constitutes abandonment of issue on appeal); Sparshott., 311 F.3d at  431 (same); Brinkman, 813 F.2d at 748 (same).

Finally, the arguments of Plaintiff's counsel at the preliminary

injunction hearing that Pulte offers in its Opening Brief are, of course, not

pleadings, and are not the proper basis for a Rule 12(b) ruling by the District Court

or this Court. While Defendants LIUNA et al. respectfully disagree with Pulte's

contention that Pulte identified any computer damage at the preliminary injunction

hearing, this disagreement is immaterial because the dispositive issue is whether

Pulte pled computer damage scienter in its subsequently filed Amended Complaint.

the place to identify such damage. Indeed, Pulte's contention on appeal that it had

evidence of computer damage scienter available at the September 22, 2009

preliminary injunction hearing, makes its failure to include any such facts in its

subsequently filed Amended Complaint of October 12, 2009 even more

dispositive. Neither the District Court, nor this Court, should have to rely on oral

representations of counsel, when the Federal Rules of Civil Procedure, including

Rules 12 and 11, compel a plaintiff to make written plausible allegations of a

claim.

### II. The District Court Did Not Err in Concluding that the Amended Complaint Failed to State An Access Violation of the CFAA

The District Court also held that Pulte had failed plausibly to allege that

Defendants violated the access prong of the CFAA which prohibits "intentionally

access[ing]" a computer and, as a result, recklessly causing "damage" or "damage

31

and loss". R. 37, at * 4 (quoting 18 U.S.C. §§ 1030(a)(5)(B) & (C)).   Specifically,

the District Court accurately noted that Pulte had failed to offer any authority for

its argument that merely sending e-mail or leaving a voice message with a recipient

constitutes obtaining "access" to a computer.  Id.

    The Court acknowledged that the term "access" has been defined by courts

as including the "freedom and ability to make use of something." Id., (quoting

AOL v. Nat'l Health Care Discount, Inc., 121 F.Supp. 1255, 1272-73 (N.D. Iowa

1990)).   Accord, Role Models America, Inc. v. Jones, 305 F. Supp.2d 564, 566-67

(D. Md. 2004) ("As another district court has noted, the word "access," in this

context, in an active verb; it means 'to gain access to,' or 'to exercise the freedom

or ability to make use of something.'). The District Court concluded that the

Amended Complaint failed to allege Defendants exercised the freedom or ability to

make use of Pulte's computers by merely sending emails or voice messages.  R.

37, at *4.

    On appeal, Pulte responds to this considered ruling of the District Court by:

(i) quarreling with the District Court's observation that Pulte had not disputed

Defendants claim of lack of access (OB at 47); (ii) repeating its conclusory

pleading of access which merely parrots the statutory language (Id.) (quoting

paragraph 67 of the Amended Complaint, paraphrasing 18 U.S.C. §§ 1030(a)(5)(B)

& (C)); and (iii) critiquing the Court's understanding of both the AOL opinion and

of emails. Id. at 49-51. Significantly, Pulte does not challenge the District Court's definition of obtaining computer access as the "freedom and ability to make use of something." Nor, for that matter, does Pulte even claim that Defendants obtained the freedom or ability to make use of Pulte's computers.

First, Pulte quibbles with the District Court's observation that Pulte failed to dispute LIUNA's claim that LIUNA did not access Pulte's computers. OB at 47. But in responding to the motion to dismiss below, Pulte offered only its legal conclusion of "access" contained in paragraph 67 of the Amended Complaint, and citations to paragraphs alleging that LIUNA facilitated the sending of emails and voice messages. Neither below, nor here on appeal, has Pulte explained how LIUNA obtained access to Pulte's computers. Furthermore, during the preliminary injunction hearing, the Court repeatedly probed Pulte counsel about how Defendants obtained access to Pulte's computers, and obtained little response other than that the transmission claim was Pulte's "primary claim," and that access was not necessary for a transmission claim. Tr. at 7-9. Under these circumstances, the District Court's observation that Pulte did not dispute LIUNA's lack of access is understandable. This observation, however, was not the basis for the Court's ruling, which was that Pulte had failed to plead access.

Second, Pulte's invocation of its one paragraph conclusory pleading of the elements of an access claim in paragraph 67 of the Amended Complaint is

33

Case: 10-1673    Document: 26    Filed: 08/10/2010    Page: 45

precisely the type of pleading practice that the Supreme Court rejected in Twombly and Iqbal, and instructed lower courts to ignore in passing upon Rule 12 motions.

Third, Pulte's effort to contort the AOL case to its use is unavailing. The District Court accepted the definition of access articulated in the AOL opinion as the "freedom and ability to make use of something," and on appeal, Pulte does not disagree with this definition.[16] The District Court also explained why application of this access definition rendered Pulte's position implausible here—the "Amended Complaint contains no allegation that by sending e-mails and leaving voice-mails, Defendants exercised the freedom or ability to make use of Plaintiff's computers." R. 37, at *4.

Pulte does not directly challenge this holding. For example, Pulte does not claim that the District Court improperly defined the term "access." Nor does Pulte claim that LIUNA exercised the ability to make use of Pulte's computers. Nor, for that matter, does Pulte counter, or contradict, the District Court's holding that "the Amended Complaint contains no allegation that by sending e-mails and leaving voice-mails, Defendants exercised the freedom or ability to make use of Plaintiff's computers." Id. at *4. On this latter point—one that would appear pivotal to an appeal focused upon the sufficiency of a pleading—Pulte's Opening Brief still

---

[16]   The District Court cited the AOL case as a source for this definition, and the AOL opinion, in turn, used a dictionary definition to explain the meaning of obtaining "access." Id. at *4; AOL, 121 F.Supp.2d at 1272.

34

Case: 10-1673    Document: 26    Filed: 08/10/2010    Page: 47

does not identify any allegation in the Amended Complaint contending that

Defendants exercised the freedom or ability to make use of Plaintiff's computers

by merely sending emails.   To the contrary, the only allegation regarding "access"

in the Amended Complaint is the conclusory legal allegation in paragraph 67 that

parrots the statutory language—the very type of allegation which Twombly and

Iqbal opinions instruct this Court to disregard. Iqbal , 129 S. Ct. at 1951

(allegations which are nothing more than a "'formulaic recitation of the elements'"

are "'conclusory and not entitled to be presumed true'") (quoting Twombly, 550

U.S. at 554-55).

Lacking factual allegations about access in its pleading, and any legal

dispute over the District Court's statutory definition of access, Pulte tries to create

a dispute by claiming that the District Court's ruling improperly hinges upon its

incorrect distinguishing of the holding in the AOL case. OB at 48-49.   While

Pulte's grievance with the District Court's interpretation of the AOL opinion is

unfounded, it is no substitute for a non-conclusory pleading of access in the

Amended Complaint.   Plaintiff bears the burden of pleading a non-conclusory

access claim—not the District Court.  Hence, Pulte's challenges to the District

Court's understanding of the AOL opinion, or of email generally, are misplaced.

The  District Court's unchallenged statutory interpretation of "access," and

the District Court's application of it to this case, are sound.  In addition, the

District Court properly understood the AOL case, and why that case is different

from this one.

The AOL case involved efforts by certain AOL subscribers to send hundreds

of millions of unsolicited bulk e-mails (described as "spam" or junk e-mail) to

other AOL subscribers through the AOL system in order to generate marketing

leads[17] This use of the AOL system was prohibited under AOL's standard

member subscription agreement, and AOL had installed several filters in its

computer system to block transmission of this spam to or from its "members." 121

F. Supp.2d at 1259-60. In essence, the Defendants were making an expressly

prohibited commercial use of the AOL computer system by means of the

transmission "through the AOL Network" of hundreds of millions of spam emails

in direct violation of AOL's conditions of membership and policies. Id. at 1266-

67. AOL sued defendants for, among other things, violating the CFAA. Id. at

1266-67.

The AOL opinion concluded that this improper use of the AOL nework

could constitute "accessing" AOL's computers without authorization under the

CFAA. As the District Court correctly noted, however, the access which was at

---

[17] AOL, 121 F. Supp.2d at 1259 ("It is undisputed that at times relevant to this
lawsuit, a large volume of e-mail messages was sent through AOL's computer
system to generate leads for [defendant]'s products.")

Case: 10-1673     Document: 26     Filed: 08/10/2010     Page: 48

issue in the <u>AOL</u> case was of AOL's computers, and <u>not</u> of the recipient's computer. R. 37, at *4.

Pulte suggests that the District Court improperly distinguished the <u>AOL</u> case by "introduce[ing] a 'direct use' vs. 'third party use' requirement that is not found in the case law or statute." OB at 50. But that is how the <u>AOL</u> court itself characterized the unauthorized "access" at issue in the case—an AOL member's unauthorized use of the "AOL network" to distribute spam to other AOL members. <u>Id</u>. at 1273. Thus, it was AOL's computers (and not the e-mail recipient's) that were being accessed (indeed, pirated) for the unauthorized purpose of disseminating spam to generate marketing leads. It was in this limited context (an AOL member's unauthorized accessing of AOL's computers to distribute spam to other AOL members) that the <u>AOL</u> opinion noted that "when a large volume of [unsolicited bulk email] causes slowdowns or diminishes the capacity of AOL to serve its customer, an 'impairment' has occurred to the 'availability' of AOL's 'system.'" 121 F. Supp.2d at1274.[18]

---

[18] Moreover, as the <u>Czech</u> opinion concluded, any such claim of impairment cannot be made in the abstract, without regard to whether the defendant has knowledge of the capacities of plaintiff's system and that harm will result from transmission. <u>Czech</u>, 674 F. Supp. at 1119 (distinguishing AOL's transmission complaint must allege "facts plausibly supporting a theory that by sending unwanted text messages [defendant] intended to cause damage to Czech's cell phone" including that defendant "also knew [that plaintiff's system] would be pushed past their operational limits by [defendants] unwanted message—that the

Case: 10-1673   Document: 26   Filed: 08/10/2010   Page: 49

Indeed, the <u>AOL</u> opinion could not have been clearer about its limited holding because it noted that "no federal statute currently exists which would prohibit a non-AOL member from sending [Unsolicited Bulk Email] to any number of AOL members' e-mail addresses, without ever accessing AOL directly." 121 F. Supp.2d at 1275.   Thus, the focus of the <u>AOL</u> opinion was on AOL's computers, not those of the e-mail recipient.  Hence, the District Court accurately identified and followed the very distinction being made by the <u>AOL</u> opinion.

Undaunted by the narrow context and language of the <u>AOL</u> opinion, Pulte takes out of context the <u>AOL</u> opinion's assertion that when someone sends an email "and the message is then transmitted through a number of other computers until it reaches its destination, the sender is making use of all of those computers, and is therefore 'accessing' them."  Opening Brief, at 49 (quoting <u>AOL</u>, 121 F. Supp.2d at 1272.  Rather than acknowledge that this language in the <u>AOL</u> opinion was referring to the usurpation of AOL's computers to transmit hundreds of millions of unauthorized spam emails, Pulte argues instead that this language broadly authorizes the criminalization of every transit stop in every computer, server, or service provider portal through which any email is transmitted.  OB, at

---

sender knew the circumstances of the recipient's device when such messages would be received." ).

50-51. Hence, Pulte's access claim boils down to the legal conclusion that equates the transmission of email with obtaining access to all computers through which that email may transit. OB, at 51.

The grandiosity of this contention is fairly reflected in footnote 13 of the Opening Brief, in which Pulte faults the District Court's understanding of "how email works," by pointing out that emails travel through servers and computers, such that "accessing computers is the sine que non of internet technology." Opening Brief, at 48 n.13.   Whatever else can be said as to Congressional intent to criminalize obtaining access to computers, it is exceedingly unlikely that Congress intended to criminalize every communicative use of the Internet.  Such a result is not dictated by the plain language of the CFAA, nor is it compatible with the numerous overlapping and reinforcing constitutional and statutory interpretation doctrines compelling a narrower scope to the CFAA as is described more fully in Section III infra.

The District Court did not misconstrue the AOL opinion, nor did it misunderstand e-mail in concluding that merely sending a direct email does not constitute obtaining access to Pulte's computers.  Here, there is no complaint allegation that LIUNA ever obtained the freedom or ability to make use of Pulte's computers.

### III.   The District Court's Plain Meaning Construction of the CFAA is Supported By Constititional And Statutory Construction Doctrine

Although the District Court properly analyzed and applied the plain language of the CFAA, its interpretation is also reinforced by the overlapping constitutional principles and statutory construction doctrines that apply in this labor speech context, including the First Amendment,[19] and the doctrines of constitutional avoidance,[20] fair warning,[21] overbreadth,[22] and lenity.[23]

As the Supreme Court held long ago: "the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free

---

[19]   Chamber of Commerce, 128 S. Ct. at 2413.  See also NAACP v. Claiborne Hardware Co., 458 U.S. 886, 915 (1982) (nonviolent elements of speech and boycott activities entitled to First Amendment protection).

[20]   Edward J. Bartolo Corp. v. Florida Gulf Coast Bldg. and Constr. Trades Council, 485 U.S. 568, 575 (1988) (to avoid First Amendment conflict, construing NLRA to permit peaceful handbilling).

[21]   LRVCC Holdings LCC v. Brekka,  581 F.3d 1127, 1134 (9th Cir. 2009) (applying fair warning doctrine to construe CFAA narrowly) (citing United States v. Santos, 128 S. Ct. 2020, 2025 (2008); Jet One Group, Inc. v. Halcyon Jet Holdings, 2009 WL 2524864, *6 (E.D.N.Y.  August14, 2009) (citing Mourning v. Family Publications Service, Inc., 411 U.S. 356, 375 (1973).  See United States v. Lanier, 520 U.S. 259, 265 (1997) (due process requires fair warning, citing United States v. McBoyle, 283 U.S. 25, 27  (1931) (Holmes, J.)).

[22]   Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973).

[23]   Skilling v. United States, 130 S. Ct. 2896, 2929-30 (2010); Brekka, 581 F.3d at 1134.

discussion that is guaranteed by the Constitution." <u>Thornhill v. Alabama</u>, 310 U.S. 88, 102-03 (1940) (reversing conviction of union president for picketing).   It is because the speech at issue is protected by both the labor laws and the First Amendment that section 1030 should not be construed in such a manner as to criminalize protected labor speech.  <u>See, e.g.</u>, <u>Edward J. Bartolo Corp. v. Florida Gulf Coast Bldg. and Constr. Trades Council</u>, 485 U.S. 568, 575 (1988) (to avoid First Amendment conflict, construing NLRA as authorizing peaceful handbilling at shopping mall regarding labor dispute); <u>Storer Communications, Inc. v. National Ass'n Broadcast Employees</u>, 854 F.2d 144, 147 (6th Cir. 1988) (if handbilling protected, peaceful warnings of intent to handbill protected).  <u>See also</u>   29 U.S.C. §§ 104(e), (g) (prohibiting injunction against publicizing labor dispute, or against advising anyone of intent to do so).

If, on the other hand section 1030 encompasses and proscribes noncoercive protected labor speech it is substantially and constitutionally overbroad. <u>Thornhill</u>, 310 U.S. 88 (1940) (anti-picketing statute overbroad because did not take account of nature of labor dispute, or its restrained character).[24]  The overbreadth doctrine is triggered by "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from

---

[24] ).  <u>See</u> <u>City Council v. Taxpayers for Vincent</u>, 466 U.S. 789, 798 (1984) (identifying <u>Thornhill</u> opinion as source of overbreadth doctrine).

41

constitutionally protected speech or expression." <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 612 (1973). Here, because the method of speech employed—textual email messages sent to an e-mail address—is itself protected by the First Amendment, <u>Doe v. Cahill</u>, 884 A.2d 451, 456 (Del. 2005), the fact that these emails are also communications protected under sections 7 and 8(c) of the NLRA as part of a labor dispute, virtually compels the conclusion that section 1030 sweeps too broadly if it criminalizes such speech. Such a broad application of section 1030 will chill broad swaths of protected speech or expression. Again, because this speech is constitutionally protected labor speech, giving a participant to a labor dispute the unilateral discretion and authority to civilly prosecute his labor adversary for such speech can only be characterized as the work of an overbroad statute.

Similarly, an interpretation of the CFAA's transmission and access prongs that forces a speaker to guess whether his email communication or voice message on a protected matter of public concern constitutes a crime risks running afoul of the fair warning and lenity doctrines. <u>LRVCC Holdings LCC v. Brekka</u>, 581 F.3d 1127, 1134 (9th Cir. 2009) (applying fair warning doctrine to construe CFAA narrowly). It is hard to imagine that Congress intended to criminalize hitting the "Send" button for communications about matters of high public concern.

The Supreme Court recently re-affirmed that federal courts have an obligation to construe federal criminal statutes narrowly in order to preserve their constitutionality. Skilling v. U.S., 130 S. Ct. 2896, 2929-30 (2010). Here, the District Court's plain language interpretation of the CFAA's transmission prong as requiring computer damage scienter, and its access prong as requiring access, is consistent with both the language chosen by Congress and the constitutional and statutory context in which it is being applied.

## IV. The District Court Did Not Abuse its Discretion by Not Granting Leave to Amend Sua Sponte When Plaintiff Never Filed a Motion for Leave to Amend

Pulte's last contention on appeal is that the District Court committed "reversible error" by dismissing the Amended Complaint without providing Pulte with an opportunity to amend its complaint. OB at 53-55. But Pulte procedurally defaulted upon this contention by failing to file a motion for leave to amend below, and by otherwise failing to justify the granting of leave below or on appeal.

Initially, the only effort made by Pulte before the District Court to seek leave was placing a footnote on the last page of its Brief in Opposition to the Motion to Dismiss stating:

> If the Court determines that Pulte has failed sufficiently to plead one or more elements of any of its claims, Pulte requests the opportunity to amend its Complaint. Allowing an amendment, instead of simply ordering dismissal,

would help to conserve judicial resources given the familiarity this Court has with the allegations.

R. 31, at 30 n.17.

It is well established that "[w]here a request for leave to file an amended complaint simply is embedded within an opposition memorandum, the issue was not been raised properly." Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999). As the Fourth Circuit held in Cozarelli v. Inspire Pharmaceuticals, Inc., 549 F.3d 618 (4th Cir. 2008), a footnote request in an opposition brief to a motion to dismiss does not constitute motion for leave to amend under the Federal Rules of Civil Procedure, and a district does not "abuse its discretion by declining to grant a motion that was never properly made." Id. at 630 (citing United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1259 (D.C.Cir. 2004)). Accord, In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 220 (2d Cir. 2006) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief in opposition to a motion to dismiss.").

In PR Diamonds, Inc. v. Chandler, 364 F.3d 671 (6th Cir. 2004), this Court quoted and followed this precedent from other circuits in holding that " 'a bare request in an opposition to a motion to dismiss without any indication of the particular grounds on which amendment is sought, cf. Fed. R. Civ. P. 7(b)—does

Case: 10-1673     Document: 26     Filed: 08/10/2010     Page: 56

not constitute including a motion within the contemplation of Rule 15(a)." Id. at

699 (quoting Confederate Mem'l Ass'n v. Hines, 995 F.2d 295, 299 (D.C. Cir.

1993)).

In PR Diamonds, this Court found inadequate the same type of generic

request made in an opposition brief for leave to amend " 'in the event the Court

grants any part of the Defendants' motion to dismiss.'" Id. at 699 (quoting

plaintiff's opposition brief).  This Court observed that: (i) plaintiff had already

amended its complaint once (as plaintiff has done here); (ii) that plaintiff had not

filed any motion for leave to amend (as plaintiff likewise failed to do here); and

(iii) plaintiff never sought to alter or amend the judgment (as plaintiff failed to do

here.  Id. at 699.  Moreover, the PR Diamonds opinion quoted and followed the

practice of this Court as articulated in Begala v. PNC Bank, Ohio, 214 F.3d 776,

784 (6th Cir. 2000), that absent a motion prior to the granting of a motion to

dismiss, *"Plaintiffs were not entitled to an advisory opinion from the Court*

*informing them of the deficiencies of the complaint and then an opportunity to cure*

*those deficiencies."* Id. at 699 (noting the emphasis from the Begala opinion).

Here, Pulte failed to file a motion for leave to amend either before or after

the judgment below.  Instead, it has chosen to stand on the Amended Complaint.

In so doing, it has offered no explanation, either below or in its Opening Brief on

appeal, as to how it would amend the Amended Complaint.[25]   It is no abuse of

discretion for the District Court not to grant a motion for leave to amend the

Complaint that plaintiff has never made or justified.  PR Diamonds, supra.

### V. In the Alternative, This Court Should Affirm Based Upon Labor Preemption

In the District Court, Defendants also sought dismissal on the grounds of

labor preemption under the NLRA.   Defendants grounded their preemption

arguments upon the labor preemption doctrines known as Garmon preemption[26]

and Machinists preemption.[27] The District Court did not reach this issue because it

concluded that Plaintiff had failed to state a claim under the CFAA.   While the

District Court's judgment in this regard is sound, this Court can also affirm on the

alternative ground that Plaintiff's CFAA claim is preempted by federal labor law.

Appellant Pulte has responded to the labor preemption contention in

footnote 17 on page 55 of its Opening Brief.   In addition, Appellees LIUNA et al.

have  raised labor preemption as an alternative argument for affirming the District

---

before this court.'") (quoting U.S. v. Perkins, 994 F.2d 1184, 1191 (6th Cir. 1993)).
[25]   Of course, this Court's practice is not to consider arguments made for the first
time in a reply brief.  Bendix Autolite Co. v. Midwesco Enterprises, Inc., 486 U.S.
888, 894 (1988) (citing, and adhering to this Court's refusal to consider arguments
raised for first time in a reply brief); Lorillard Tobacco Co. v. Chester, Wilcox &
Saxbe, 589 F.3d 835, 847 (6th Cir. 2009) ("The law in this circuit is well
established that '[i]ssues raised for the first time in a reply brief are not properly
[26] San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959).
[27] Machinists v. Wisconsin Employment Relations Commission, 427 U.S. 282
(1976). See Chamber of Commerce v. Brown, 128 S. Ct. 2408, 2413-14 (2008)

Court's judgment in the consolidated appeal (No. 09-2245) by Pulte from the District Court's injunction denial.

Initially, many of Pulte's footnote arguments against labor preemption are predicated upon arguments from state law, or from the state law claims, that are no longer in this case because Pulte has not appealed the District Court's dismissal of Pulte's state law claims.   The pertinent remaining labor law issue is whether Pulte's federal claims under the CFAA are preempted.

### A.    **Garmon Preemption Applies**

#### 1. **Garmon/Brown Preemption Applies, Making the Garmon Exceptions Inapposite**

Defendants moved to dismiss the Amended Complaint below because the speech and conduct at issue—giving notice of, and complaint about, a labor dispute, and of support for the terminated organizing employees—was actually protected under sections 7 and 8 of the National Labor Relations Act and therefore the subject of Garmon Preemption.29 U.S.C. §§ 157 & 158.   In footnote 17 of Pulte's Opening Brief, Pulte contends that Garmon preemption is inapplicable because Defendant's conduct allegedly falls within recognized exceptions to Garmon preemption, including trespass and threats of violence.  OB at 55 n.17. But these exceptions based upon state law are wholly inapplicable here because: (1) there are no state law claims before this Court given that Pulte has not

appealed the District Court's dismissal of its state law claims; and (2) even if

Pulte's state law claims survived its failure to appeal their dismissal, under

Supreme Court precedent the actually protected nature of this conduct

conclusively bars jurisdiction over state law claims, obviating any potential

consideration of state interests.  See, e.g., Brown v. Hotel and Restaurant

Employees and Bartenders Int'l, 468 U.S. 491, 501 (1984) (citing Garmon).  In

other words, the various exceptions to Garmon preemption that take into account

countervailing state interests are inapplicable here, as the speech activity is

actually protected.  Id.   Accord, Pierson v. Ahern, 2005 WL 168 WL 1685103, *5

(Mich. App. July 19, 2005) (upholding trial court refusal to balance state interests

where conduct actually protected or prohibited).

### 2. Even if Not "Actually Protected," the Activity is Arguably Protected, Triggering Garmon Preemption in Favor of the NLRB

The distinct and separate form of Garmon preemption applicable to

"arguably protected or prohibited" labor activity is geared toward routing labor

disputes to the primary jurisdiction of the National Labor Relations Board.

Garmon, 359 U.S. at 242.    Here, of course, the labor dispute which is the subject

of the speech activity at issue is a labor dispute that was actually placed before the

NLRB. [28] Indeed, since LIUNA filed its charge before the NLRB, the General

Counsel of the NLRB, on October 30, 2009, issued a formal complaint against

Pulte arising out of this incident, alleging that Pulte had committed unfair labor

practices by, among other things, terminating six of its employees for engaging in

organizing activity.  R. 34 Ex. 1 & 2.  The Board Counsel's allegations that Pulte

"has been interfering with, restraining, and coercing employees in the rights

guaranteed in Section 7 of the Act," undermines Pulte's contention that the speech

activity at issue, all of which is aimed at this labor dispute, does not even arguably

fall within the protections and prohibitions of sections 7 and 8 of the NLRA.  Id. ¶

6.  For that matter, Pulte admitted below that the "majority of these messages refer

to a dispute over the 'Tucson 7' employees," R. 31, at 12 (Opp. Brief, at 12),

    The two Garmon exceptions claimed by Plaintiff below—that the speech

activity is only of "peripheral concern" to the federal labor laws, or that it touches

local interests--are not well taken.  R. 31 at 10-13 (Opp. Brief, at 10-13).   The

speech at issue is at the core of protected labor speech about an ongoing labor

dispute pending before the NLRB.   Speech about a labor dispute that falls within

---

[28]  The Supreme Court has noted that the statutory term "labor dispute" for
purposes of the Norris-LaGuardia Act is "virtually identical" to the term as used in
the NLRA.  Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n, 457
U.S. 702, 711 n.11 (1982); United States v. Hutcheson, 312 U.S. 219, 134 n.4
(1941) (noting that, in the NLRA "Congress gave similar breadth to the definition
of a labor dispute" as in the Norris-LaGuardia Act).

both the speech protections of the Norris-LaGuardia Act, 29 U.S.C. § 104, and the

specific speech protections of section 8(c) of the NLRA, is hardly "peripheral" to

federal labor law.   As to the applicable "local interests," Michigan courts have

held "[t]his exception to the Garmon preemption doctrine has been construed

narrowly, in favor of the broad exclusive jurisdiction of the NLRB." Pierson v.

Ahern, 2005 WL 1685103, *3 (Mich. App. July 19, 2005), appeal denied, 474

Mich. 1110, 711 N.W.2d 747 (2006).  The NLRB explained in its amicus brief to

the Ninth Circuit in the Chamber of Commerce  case about the scope of section

8(c)'s protection of labor speech that  the "local feeling" and "peripheral concern"

Garmon exceptions were inapplicable  precisely because the case "involves the

core activities that Congress declared to be a federal concern: union organizing,

free debate on labor-management issues, and Board conducted elections of

employee representatives."  NLRB Amicus in Ninth Circuit, at 24 n.20 (R.  34,

Exhibit 3) (excerpts).  This only re-affirms the fact that this activity is actually

protected activity under the NLRA.[29]

---

[29]  Accordingly, it is immaterial whether Plaintiff has a Board remedy for
Defendants' actually protected conduct.  Indeed, the Supreme Court, in the
Chamber of Commerce opinion, held that because Congress amended the NLRA to
codify an express protection for noncoercive speech in section 8(c), there was no
need to "'decipher the presumed intent of Congress.'"  128 S. Ct. at 2414 (quoting
and distinguishing the Sears opinion).  Plaintiff's invocation of the Sears case is
also inapposite because Sears acknowledged that actually protected activity is
subject to Garmon preemption: " 'When it is clear that or may fairly be assumed

## B. <u>Machinists</u> Preemption Applies

The 2008 Supreme Court opinion in <u>Chamber of Commerce v. Brown</u>, 128 S. Ct. 2408 (2008) holds that the <u>Machinists</u> preemption applies to labor organizing speech activity protected under section 8(c) of the NLRA.  In footnote 17 of its Opening Brief, Pulte seeks to distinguish the <u>Chamber of Commerce</u> case by claiming that <u>Machinists</u> preemption (i) is limited to collective bargaining agreements, and (ii)  is inapplicable  to laws of general application. OB at 55-56 n.17.    Neither contention is correct.

### 1.  <u>Machinists</u> Preemption is Not Limited to Collective Bargaining

Initially, the argument that <u>Machinists</u> preemption is limited to the collective bargaining context is rebutted by the Supreme Court's recent <u>Chamber of Commerce</u> opinion, in which the Court  found <u>Machinists</u> preemption applicable in the absence of any collective bargaining agreement.  <u>See</u> <u>Chamber of Commerce</u>, 128 S. Ct. at 2414 (<u>Machinists</u> pre-emption is based on balance struck by Congress regarding "'union organizing, collective bargaining, and labor disputes'") (quoting Cox, <u>Labor Law Preemption Revisited</u>, 85 Harv. L. Rev. 1337, 1352 (1972)).

---

that the activities which a State purports to regulate are protected by the [NLRA] due regard for the federal enactment requires that state jurisdiction must yield.'" <u>Sears</u>, 436 U.S. at 187 (quoting <u>Garmon</u>, 359 U.S. at 244).

The <u>Chamber of Commerce</u> opinion explicitly held that "the addition of §

8(c) [to the NLRA in 1947] expressly precludes *regulation of speech about*

*unionization*." <u>Id.</u> (emphasis added). [30]  In so holding, the Supreme Court

identified the sources of <u>Machinists</u> preemption as sections 7 and 8 of the NLRA.

<u>Id.</u> at 2414 (citing sections 7 and 8 of the NLRA).   Thus,  organizing speech—

including the speech at issue here--clearly falls within the <u>Machinists</u> preemption

doctrine because it is protected under section 8(c) of the NLRA, and of course

section 7 of the NLRA.

### 2. Machinists Preemption is Not Limited to Laws of General Applicability

Pulte's second argument that <u>Machinists</u> preemption is inapplicable to "laws

of general applicability," including "the CFAA and the pendent state claims," is

misplaced because there are no remaining pending state claims. OB, at 55 n.17.

Further, the  argument that <u>Machinists</u> preemption is inapplicable to laws of

general application is directly counter to the Supreme Court's holding in <u>Garmon</u>

and its progeny that, for preemption purposes, it doesn't matter "whether the States

---

[30]   The Supreme Court has held that the "primary source of protection for union
freedom of speech under the NLRA, however, particularly in the organizational
context, is the guarantee in § 7 of the Act of the employee's rights 'to form, join, or
assist labor organizations.'" <u>Nat't Letter Carriers</u> 418 U.S. at  277 . The <u>Chamber
of Commerce</u> opinion makes clear that section 8(c), added by Congress in 1947,
further codifies the speech rights of both employers and employees.  128 S. Ct. at
2413.

have acted through laws of broad general application rather than laws specifically directed toward the governance of industrial relations." Garmon, 345 U.S at 244 (to "allow States to control conduct which is the subject of national regulation would create potential frustration of national purposes.").

Moreover, the Supreme Court has since re-affirmed that the fact that a law is one of general applicability " is not sufficient reason to exempt it from pre-emption." New York Telephone Co. v. New York State Department of Labor, 440 U.S. 519, 533 (1979) (citing Farmer v. United Brotherhood of Carpenters, 430 U.S. 290, 300 (1974)).  In New York Telephone , the Court explained that the fact a law is one of general application is not determinative, but instead only makes the task of discerning  whether Congress  intended to preempt more difficult than with respect to laws "directed specifically at concerted activity."  Id. at 534 (citing Sears, 436 U.S. at 194-95; Farmer,  430 U.S. at 300 ).   Here, in the Chamber of Commerce opinion, the Supreme Court expressly held that Congress left no doubt whether it intended section 8(c) to have pre-emptive effect by expressly protecting labor speech.  Chamber of Commerce, 128 S. Ct. at 2414 ("The explicit direction from Congress to leave noncoercive speech unregulated makes this case easier, in at least one respect, than previous NLRA cases because it does not require us to 'to decipher the presumed intent of Congress in the face of that body's steadfast silence.'" (quoting and citing Sears, 436 U.S. at 188 n.12).

53

The Chamber of Commerce opinion squarely holds that: "[I]n the case of noncoercive speech, however, the protection [of the NLRA] is both implicit and explicit." 128 S. Ct. at 2414 (emphasis added). The Court cited section 8(c) as an express protection by Congress "of free debate [that] forcefully buttresses the pre-emption analysis in this case," because it *expressly precludes regulation of speech about unionization.*" Id. (emphasis added). According to the Supreme Court, the NLRA embodies a Congressional "policy judgment" to foster the 'freewheeling use of the written and unspoken word.'" Chamber of Commerce, 128 S. et. At 2414 (quoting Letter Carriers, 418 U.S. at 272-73). In other words, this is the very type of "'compelling congressional direction'" that makes the preemptive effect of the NLRA evident over any contrary law of general application. New York Telephone Co., 440 U.S. at 540 (quoting Garmon).

Below, Plaintiff also argued that section 8(c) should not apply because: section 8(c) allegedly only prohibits the use of labor speech as evidence in Board unfair labor practice proceedings; this case involves property law, rather than free speech: and Pulte is not a public forum or actor subject to the First Amendment, but its legal claims are nonetheless valid "time, place, and manner" restrictions under the First Amendment. R.31, at 16-19 (Opp. Brief). These contentions are incompatible with the Chamber of Commerce holding. The subject of the Chamber of Commerce opinion was regulation of the use of state funding by

54

private employers—a matter which California contended was only a property issue, but which the Court instead characterized as a labor speech issue under both section 8(c) and the First Amendment. <u>Chamber of Commerce</u>, 128 S. Ct. at 2413 (section 8(c) "'implements the First Amendment'") (quoting <u>NLRB v. Gissel Packing Co.</u>, 395 U.S. 575, 617 (1969)). The Supreme Court held that section 8(c) reflects a Congressional policy judgment "which suffuses the NLRA as a whole," <u>id.</u>, and had no difficulty applying section 8(c) as more than just an evidentiary limitation to unfair labor practice proceeding before the NLRB. In fact, it squarely held that the NLRB lacked authority to regulate speech protected by section 8(c).

Again, Plaintiff's arguments cannot survive scrutiny under the <u>Chamber of Commerce</u> opinion. 128 S. Ct. at 2413-14 (describing § 8(c) as protecting "speech by both unions and employers from regulation by the NLRB"). The central holding of <u>Chamber of Commerce</u> is that Congress expressly directed that noncoercive speech about unionization be left "unregulated." 128 S. Ct. at 2412. Critically, the Court held that section 8(c) expressed Congressional intent that such speech be free from both state and federal regulation and preempts regulation from the NLRB.[31] The Court noted that Congress enacted section 8(c)

---

[31] <u>Chamber of Commerce</u>, 128 S. Ct. at 2412 (<u>Machinists</u> preemption "forbids both the National Labor Relations Board (NLRB) and States to regulate conduct that Congress intended 'be unregulated' . . .") (quoting <u>Machinists</u>, 427 U.S. at 140).

in part as a check upon the "aggressive" regulation of speech by the NLRB, and hence its purpose was to "implement the First Amendment" against government regulation, including by the Board. Id. at 2413-14.  The Supreme Court held that Congress affirmatively amended the NLRA to codify the speech rights of section 8(c) "rather than leaving to the courts the task of correcting the NLRB's decisions on a case-by-case basis." Id. at 2413-14.  In other words, Congress intended that noncoercive free speech rights be free from regulation by the NLRB and by federal courts.　As the Chamber of Commerce opinion held, if the Board cannot regulate speech protected under section 8(c), then the States could not. Id. at 2417. [32]

## C. **Garmon** and **Machinists** Preemption Apply to the Sole Federal Claim

Plaintiff below challenged whether Garmon or Machinists preemption is applicable to the federal computer claim.  Both doctrines apply to the alleged federal claim.

---

[32] While Plaintiff contends that its claims are content-neutral, the Amended Complaint is replete with allegations about the content of speech at issue. Amended Complaint, ¶¶ 19 (alleging a targeted effort "to sabotage and interrupt Pulte's business operations and negatively affect its relationships with its employees, the general public, customers, potential customers, and vendors"), 26 ("The emails also contained false information, repeating the erroneous conclusion that the crew was terminated for wearing a LIUNA t-shirt…"), 48 (LIUNA "has falsely accused Pulte of terminating four" employees)

### 1. **Machinists** Preemption Applies to the Federal Claim

Initially, as the Supreme Court held in <u>Chamber of Commerce</u>, Congress intended that non-coercive speech about unionization be "unequivocally pre-empted" from regulation by means of an "explicit direction from Congress to leave noncoercive speech unregulated." 128 S. Ct. at 2414. The <u>Chamber of Commerce</u> opinion noted that the Supreme Court had previously "characterized <u>Machinists</u> pre-emption as 'creat[ing] a zone free from all regulations, whether state or federal.'" <u>Id</u>. at 2417 (quoting <u>Building and Constr. Trades Council v. Associated Builders & Contractors of Mass.,</u> 507 U.S. 218, 226 (1993) ("<u>Boston Harbor</u>")). Thus, unlike <u>Garmon</u> preemption, which is considered an implied preemption discerned by courts, the <u>Machinist</u> preemption applicable to section 8(c) is an express Congressional mandate for preemption, making the judicial conclusion about preemption "easier." <u>Id</u> at 241.

As to <u>Machinists</u> preemption, the <u>Chamber of Commerce</u> opinion explained that another federal statute "will contract the pre-emptive scope of the NLRA if it demonstrates that 'Congress has decided to tolerate a specific measure of diversity' in the particular regulatory sphere.'" 128 S. Ct. at 2418 (quoting <u>New York Telephone</u>, 440 U.S. at 546 . In other words, for <u>Machinists</u> preemption purposes, the pre-emptive scope of the NLRA can be contracted by another federal

Case: 10-1673     Document: 26     Filed: 08/10/2010     Page: 70

statute, but only if that statute is a "tailored exception" to the NLRA which does

not conflict with it.  There is no indicia in the CFAA that Congress intended that

the CFAA would  contract the preemptive scope of the NLRA, or that the CFAA

should be an exception to the NLRA.

### 2. **Garmon** Preemption Applies to the Federal Claim

A corollary of the Garmon doctrine is that if the NLRA confers

exclusive jurisdiction upon the NLRB, a federal court lacks jurisdiction. Storey v.

Local 327, Int'l Broth. Teamsters, 759 F.2d 517, 520 (6th Cir. 1985) ("Under the

preemption doctrine as articulated by the Supreme Court in [Garmon], neither state

nor federal courts have subject matter jurisdiction over claims which implicate

national labor policy").

Preemption of federal claims, however, presents a distinct conflict issue—a

conflict between the federal labor statutory and administrative regime versus a

separate federal statutory regime, both created by Congress.   Specifically, federal

courts have recognized that, where two independent federal remedial regimes exist,

courts should try to uphold both unless one is in conflict with the other. See, e.g.,

Trollinger v. Tysons Foods, Inc., 370 F.3d 602 (6th Cir. 2004) (civil RICO claim

against employer for hiring illegal immigrants to depress wages not preempted

under Garmon).

In <u>Trollinger</u>, this Court held that "federal courts may enforce congressional remedies created by a different federal statute so long as the statute does not conflict with Sections 7 or 8 of the NLRA and so long as litigants do not 'circumvent the primary jurisdiction of the NLRB simply by casting statutory claims [under Sections 7 or 8 of the NLRA] as violations of [an independent federal law]." 370 F.3d at 610 (quoting <u>Communications Workers v. Beck</u>, 487 U.S. 735, 743-44 (1988))).

With all due respect, defendants submit that <u>Garmon</u> preemption is not solely motivated by the desire to avoid conflicts, and hence it provides even greater breathing room for application of the NLRB's expertise. <u>Garmon</u>, 359 U.S. at 247 (even where state damages award or injunction would pose no conflict with federal law, cannot permit either because would allow "two-law-making sources to govern" labor disputes). Nonetheless, the conflict here between the federal labor protection of speech regarding a labor dispute—indeed speech about an unfair labor practice proceeding currently before the NLRB—and the plaintiff's contorted effort to create a computer crime from emails addressing this labor dispute is palpable. The right to communicate about the existence of a labor dispute (including to publicize and to give notice of an intent to publicize a labor dispute) and the content of any such communication, are protected generally under section 8(c) of the NLRA (29 U.S.C. § 158(c)) and specifically under the Norris-

59

LaGuardia Act (29 U.S.C. §§ 104(e) & (g)). [33]   Under these circumstances,

Garmon preemption is warranted.


## Conclusion

For the foregoing reasons, the District Court's judgment should be affirmed.

Respectfully submitted,

/s/  Terrance G. Reed
Terrance G. Reed
LANKFORD & REED, PLLC
120 N. St. Asaph Street
Alexandria, VA  22314
703-299-5000
tgreed@lrfirm.net


/s/Christopher P. Legghio
Christopher P. Legghio
Martens, Ice, Klass, Legghio &
Israel, P.C.
305 S. Washington Ave., Ste.
600
Royal Oak, MI  48067-3837
248-398-5900

*Attorneys for Appellees*

---

[33]   The Supreme Court in Garmon noted that damage awards are as deleterious as injunctions to the uniformity of the federal labor regime.  Garmon, 359 U.S. at 247 ("Such [prohibited state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief."); Mobile Mechanical Contractors Ass'n, Inc. v. Carlough, 664 F.2d 481, 488 (5th Cir. 1981).

Case: 10-1673     Document: 26     Filed: 08/10/2010     Page: 72

Certificate of Compliance

I hereby certify that:

1.  This Corrected brief complies with the type-volume
    limitation of Fed. R. App. P. 32(a)(7)(B) because this
    brief contains  12,146  words, excluding parts of the
    brief exempted by Fed. R. App. P. 32(a)(7)(B)(III);
    and

2.  This Corrected brief complies with the typeface
    requirements of Fed. R. App. P. 32(a)(5) and the type
    style requirements of Fed. R. App. P. 32(a)(6) because
    it has been prepared in a proportionally spaced
    typeface using Microsoft Word 7.0, in 14 point Times
    New Roman.

    /s/ Terrance G. Reed
    Terrance G. Reed
    LANKFORD & REED, PLLC
    120 N. St. Asaph Street
    Alexandria, VA  22314
    703-299-5000
    703-299-8876
    tgreed@lrfirm.net
    *Attorney for Appellees*
    Dated:  August 10, 2010

# ADDENDUM – 1

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Case: 10-1673      Document: 26      Filed: 08/10/2010      Page: 74

| RE # | DATE | DESCRIPTION |
|------|------|-------------|
| 1 | 9/15/2009 | Verified Complaint and Jury Demand |
| 6 | 9/16/2009 | Defendants-Appellees' Response to Plaintiff-Appellant's Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction |
| 13 | 9/21/2009 | Plaintiff-Appellant's Supplemental Brief in Support of Its Motion for a Temporary Restraining Order and Preliminary Injunction |
| 14 | 9/24/2009 | Order Denying Motion for Preliminary Injunction |
| 21 | 10/12/2009 | First Amended Verified Complaint and Jury Demand |
| 29 | 10/26/2009 | Defendants-Appellees' Motion to Dismiss Plaintiff-Appellant's First Amended Complaint |
| 31 | 11/19/2009 | Plaintiff-Appellant's Response to Defendants-Appellees' Motion to Dismiss Plaintiff-Appellant's First Amended Complaint |
| 34 | 12/03/2009 | Defendants-Appellees' Reply to Response to Defendants-Appellees' Motion to Dismiss Plaintiff-Appellant's First Amended Complaint |
| 37 | 5/12/2010 | Order Granting Defendants-Appellees' Motion to Dismiss |
| 38 | 5/12/2010 | Judgment in Favor of Defendants-Appellees' Against Plaintiff-Appellant |

CERTIFICATE OF SERVICE

I certify that on August 10, 2010 I caused a Corrected copy of the Opposition

Brief of Appellees Laborers' International Union of North America, et al., to be

served electronically via CM/ECF to the following and all parties of record:

Mr. John F. Birmingham
Foley & Lardner, LLP
One Detroit Center
500 Woodward Avenue
Suite 2700
Detroit, MI  48226-3489

                              /s/ Terrance G. Reed
                              TERRANCE G. REED
                              LANKFORD & REED, PLLC
                              120 N. St. Asaph Street
                              Alexandria, VA  22314
                              703-299-5000
                              tgreed@lrfirm.net